LANGVILLE, AN INFANT, Etc., et al. *v.* GLEN
BURNIE COACH LINES, INC.

[No. 91, September Term, 1963.]

182

Decided December 13, 1963.

The cause was argued before BRUNE, C. J., and HAMMOND, PRESCOTT, HORNEY and SYBERT, JJ.

*John Brockenbrough Fox,* with whom was *Gerald A. Fox* on the brief, for appellants.

*W. Harvey Beardmore,* with whom were *Rouse, Morton & Beardmore* on the brief, for appellee.

PRESCOTT, J., delivered the opinion of the Court.

Appellants are a minor, suing for injuries suffered while a passenger on a contract-carrier's school bus, and her father, suing to recover for her medical expenses.

Appellants concede that the doctrine of *res ipsa loquitur* has no application here; hence the only question involved is whether there was sufficient evidence of primary negligence on the part of defendant or its driver to take the case to the jury.

We must, therefore, examine the evidence adduced in a light most favorable to appellants and give them the benefit of all reasonable and permissible inferences to be drawn therefrom.

Appellants produced testimony to the following effect. The minor, a female aged 16, was a student at a public school, and rode a school bus to and from school. Appellee is a contract carrier, and was the owner of the bus in which the minor was riding when injured. She boarded the bus at Glen Burnie, and it, preceded by two other buses, proceeded toward her home. After proceeding quite a few miles, during which stops had been made by all three of the buses without incident, the first and second buses stopped, and appellee's bus ran into the rear of the second, injuring the minor. The highway, at the point of collision, was a rather narrow, secondary one, but relatively straight.

Lt. Bates and Officer Fertitta arrived at the scene shortly after the collision. They examined the brakes on appellee's bus, and Bates found the brake pedal to be "hard and firm." He stated that he found the foot brake to be in operating order, and, although he could not "say for sure," he thought it was in "reasonably good condition."

Fertitta testified that the operator of the bus, at the scene, told him that his brakes failed to hold, and, even though he placed the bus in low gear to slow down, it struck the bus in front of him; that the bus left no skid marks; and that he knew nothing about the braking system of the kind on the bus, but "the brake pedal seemed to have free play." He stated further that when he tested the foot brake, the motor was off, and he knew "the motor had to be running for the vacuum to work, but not for the hydraulic system."

The appellants then called the service manager for the Hoffman Truck Center, a man of twenty years' experience in the repairing and maintenance of heavy-duty trucks and buses. He explained in detail the hydrovac system of braking. He examined appellee's vehicle; the "hard pedal" indicated to him that the hydrovac or the check valve in it was faulty. He stated that the hydrovac magnifies "many, many times" the pressure of the brake fluid, and without it, there would not be sufficient pressure on the brake shoes to stop the bus. When the engine

is not running, or the hydrovac is not operating correctly, there is a "hard pedal, just like pushing against a stone wall." On the other hand, when the engine is running and the hydrovac operating properly, there is a "soft pedal."

The hydrovac sustained no damage to its exterior casing, and the witness found no leaks of brake fluid. He tested the suspected hydrovac unit by removing it from the bus, and installing it in another bus of the same kind. By this method, he "proved that it was defective." He found that the check valve was inoperative, which could mean that the valve was defective, or dirt or some foreign material had gotten into it. The witness pointed out that the unit did not require regular inspection or maintenance, and there was no way of ascertaining a defect "prior to actual failure." He stated that after "years and years of use," the hydrovac should be dismantled, but he did not think a six-year-old one, such as involved herein, should be dismantled.

The minor plaintiff, who had no driver's license and could not see the speedometer, took the stand and said the bus was going "about 45-50 miles an hour" (the maximum for school buses is 45 miles per hour; Code (1957) Article 66½, § 261). She stated the bus had made several stops on the trip without difficulty, and prior to the collision, "the bus driver tried to slow down but he just couldn't." She saw him "pushing the brake," and "put his foot on the brake but it didn't help at all." Several other young passengers testified. They used some adjectival descriptions of the operation of the bus, such as it was going "fast," or at a "normal" speed, but they added little, if anything, to aid the appellants' cause. As a matter of fact, one of them stated that "something happened to the bus mechanism."

On this testimony, all offered by the plaintiffs below, Judge Sachse granted a motion for a directed verdict in favor of the defendant, and his ruling was, we think, correct. The plaintiffs faced one of those situations where it is difficult to prove enough to take their case to the jury on the question of primary negligence, without proving too much to permit a jury to pass thereon.

It is fundamental that in an action for damages for injuries

alleged to have been caused by defendant's negligence, the burden is upon the plaintiff to prove affirmatively defendant's negligence, and that it was a proximate cause of the injuries. For the purposes of this case, we shall assume, without deciding, that there was some evidence to support a possible inference of negligence on the part of appellee's driver had no brake failure been involved.[1] However, plaintiffs proceeded further and showed by their own testimony that a sudden and unexpected brake failure was involved; and the cause of that failure was such that a reasonable inspection or test of the brakes would not have revealed. Compare *Sothoron v. West,* 180 Md. 539, 26 A. 2d 16; *Kaplan v. Stein,* 198 Md. 414, 84 A. 2d 81; *Garfinkle, et al. v. Birnios,* 232 Md. 402, 194 A. 2d 91; and *Currie v. United States,* 312 F. 2d 1 (C. A. 4), wherein *Hickory Transfer Co. v. Nezbed,* 202 Md. 253, 96 A. 2d 241, is distinguished.

At this point, we are confronted by the well-established rule of evidence that the burden mentioned above is not met by proof adduced by the plaintiff to the effect that defendant's negligence may have caused the injuries, or even that it probably did cause them, if it also appears from plaintiff's evidence that the injuries may have resulted from some other cause for which the defendant is not responsible. The rule was stated by Chief Judge McSherry for the Court in *Strasburger v. Vogel,* 103 Md. 85, 91, 63 A. 202, thus: "But when the plaintiff himself shows that the injury complained of must have resulted *either* from the negligence of the defendant *or* from an independent cause for the existence of which the defendant is in no way responsible, he cannot be permitted to recover until he excludes the independent cause as the efficient and proximate cause of the injury * * *." See also *Moore v. American Stores Co.,* 169 Md. 541, 182 A. 436; *Wasserman v. Hutzler Co.,* 219 Md. 310, 149 A. 2d 1; *Joffre v. Canada Dry, Inc.,* 222 Md. 1, 158 A. 2d 631, and cases referred to in the opinions. Compare *Great Atlantic, etc., Co. v. Adams,* 213 Md. 521, 132 A. 2d 484.

We think the evidence produced by the plaintiffs in the

---

1. A rather tenuous assumption, especially after the above mentioned concessum that res ipsa has no application here.

instant case falls directly within the pattern of the above rule, and precludes their recovery against the defendant. It is obvious that the defendant could not properly be held responsible for a sudden and unforeseeable brake failure such as that proved by the plaintiffs, and which they showed could have caused the injuries; therefore it was incumbent upon them to eliminate the brake failure as the efficient and proximate cause of the injuries complained of, before they could recover for the negligence of appellee's driver, which we have had to assume. This, they failed to do; consequently, the action of the trial judge in taking the case from the jury was correct.

*Judgment affirmed, with costs.*