DOROTHY J. MUDRICK ET VIR *v.* JERRY
LEE WEAKLEY ET AL.

[No. 245, September Term, 1972.]

*Decided February 23, 1973.*

176

The cause was argued before THOMPSON, MOYLAN, CARTER and DAVIDSON, JJ.

*David Kayson* for appellants.

*Francis J. Ford* for appellees.

THOMPSON, J., delivered the opinion of the Court.

This case arises out of an accident which occurred October 9, 1968, between two eastbound vehicles on Randolph Road in Montgomery County, Maryland. Dorothy J. Mudrick and her husband brought suit against Jerry Lee Weakley and his employer, Alfred H. Smith, for physical injuries allegedly sustained by Mrs. Mudrick, for damage to Mr. Mudrick's automobile, medical expenses and for injuries to their marriage relationship. The jury returned verdicts for the defendants. From judgments on those verdicts the Mudricks have brought this appeal, alleging an error in the jury instructions.

Mrs. Mudrick testified she was proceeding between 25 and 30 miles per hour along Randolph Road aware that the truck driven by Weakley "was about a car length and a half, maybe two car lengths behind me." As she was driving through this residential section, she noticed a dog "up on the grass in front of one of the homes." The portion of Randolph Road with which we are concerned has three eastbound lanes separated from the westbound lanes by a curbed grass median strip. Both vehicles involved in the collision were operating in the center eastbound lane. There were a few cars parked in the right lane and few cars passed Mrs. Mudrick and

Weakley in the median-most lane. Concerning the dog, Mrs. Mudrick's attorney asked her:

"Q. Now, how far away were you from the point where the animal was when you first saw him?
A. About 300 feet.
Q. And did you ever see the animal again?
A. Yes, little while later I saw him down the sidewalk.
Q. Did you ever see him after that?
A. Then on the curb.
Q. Did you ever see him after that?
A. Yes, when he was about, seemed like 6 feet or so in front of me coming toward the right front of my car.
Q. Now, as he was heading toward the right front of your car, did you do anything?
A. Yes, I stopped.
Q. Well, when you say you stopped, did you hit the dog?
A. I heard a yelp, but we couldn't find the dog afterward.
Q. Now, when you came to a stop, did anything happen after you came to a stop?
A. Yes. I was then struck in the rear by a truck."

She stated on cross-examination that "just before the collision occurred, a car [about three car lengths] in front of me swerved to the outside lane." She was asked, "And was it to your judgment at that time that the reason for that swerving or veering was that the dog was indeed posing a problem?" She replied in the affirmative. She was then asked, "And isn't it correct that the reason you were able to tell us the various positions of the dog as you were proceeding down the roadway is you were concerned about that dog?" She answered, "I was watching it; yes, sir." * * * Q. "And you had been

watching the dog for a distance of about 300 feet, isn't that correct? A. Yes, sir. Q. That is about the length of a football field; isn't it? A. Yes, sir."

\* \* \*

"Q. Your best recollection is you were doing 25 to 30 miles, is that correct?

A. Yes, sir.

Q. Am I further correct, Mrs. Mudrick, that prior to the time that you actually applied the brakes when the dog was six feet in front of you, you had not given any type signal to any of the traffic to your rear of any intent to come to a stop; is that correct?

A. Yes, sir.

Q. You had not given a hand signal, put your hand out or waved it or anything like that?

A. No.

Q. You had not tapped your brakes to flash your lights at all; had you?

A. No.

Q. So from the time you were proceeding along with the truck behind you for a distance of, some distance, the only time you applied your brakes was when the dog was out in the roadway; is that correct?

A. Yes, sir.

Appellee Weakley testified that he had been following Mrs. Mudrick in his employer's truck for several blocks and that he stayed about forty feet behind her automobile, traveling at a constant speed of 30 miles per hour. He saw Mrs. Mudrick's brake lights and the nose of her car "go down." He saw nothing in the roadway that might have accounted for the sudden stop.

The appellants assign as error the trial court's instructions to the jury which they allege were prejudicially incomplete. During his instructions to the jury as to the law in Maryland, the trial judge stated: "The driver of

the front car must also exercise ordinary care not to stop or slow up without giving the driver of the rear car adequate warning of his or her intention to do so." The judge quoted from various Motor Vehicle Laws in force on the date the accident occurred. He specifically referred to "Sec. 228 which provided that no person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal to the driver of any vehicle immediately to the rear when there is an opportunity to give such a signal." [1]

Appellants rely heavily upon the concept that a display of brake lights constitutes an "appropriate signal" required under the statute. They urge that it was reversible error for the trial judge not to read to the jury the provisions of Art. 66½, § 229 [2] that the signal required "shall be given either by means of the hand and arm or by a signal lamp or signal device . . ." They contend that this alleged misprision misled the jury into believing that the giving of a hand signal was the only way Mrs. Mudrick could show her freedom from contributory negligence.

We disagree with appellants' assessment of the effect of the trial judge's instructions. The jury was instructed in detail on the duties and obligations of the respective drivers involved in a "rear end" collision. The law as to ordinary care, contributory negligence, sudden emergency and the effect of a violation of any motor vehicle statute were explained to the jury. The court explained to the jury their fact-finding duty and their obligation to apply the law. He stated, "You can apply your every day knowledge and your experience in life to the testimony that you hear to help you determine what the facts are." [3]

---

1. Compare language as re-enacted in the present Art. 66½, § 11-604 (c).

2. Now covered by Art. 66½, § 11-605.

3. Warning lights which function automatically upon depression of a brake pedal constitute a proper signal of the driver's intention to stop. *Todd v. Ferrell*, 212 Md. 574, 130 A. 2d 581. The Court of Appeals observed more recently in *Kantor v.*

That appellee Weakley was warned by Mrs. Mudrick's brake lights of her intention to stop was not an issue in this case. There was no dispute on this question. The real issue was, in view of Mrs. Mudrick's observation of the animal steadily approaching the highway, whether by applying her brakes and activating the automatic lights she thereby gave a timely warning to the driver of the vehicle immediately to the rear. We do not see how the jury was misled as to the species of the warning required under the statute; on the contrary it appears that the jury concluded from the ample evidence before them that in view of Mrs. Mudrick's knowledge, her belated signal did not fulfill her obligation of due care to avoid collision with the vehicle behind her.

The Court of Appeals has observed that:

> "The average jury of today is composed of intelligent people. For the main part, they generally know and understand what is going on in a trial, and realize the purport of the judge's charge. It is unnecessary, in order not to be misleading or confusing, for the court to set forth in minute detail the limitations of every conceptual interpretation that might be placed upon his charge. The purpose of oral charges is to tell the jury in simple words what the law is in the case before them, and we will not be too particular in criticising the words used if the result be sufficient. *Lloyd v. Yellow Cab Co.*, 220 Md. 488." *Hartman v. Meadows*, 243 Md. 158, 220 A. 2d 555.

As we observed in *Shotkosky v. State*, 8 Md. App. 492, 509, 261 A. 2d 171, 181:

> "It is not necessary for this Court to decide that the instructions as given were the clearest of all

---

*Ash*, 215 Md. 285, 137 A. 2d 661, "It is a matter of common knowledge that nearly all automobiles of today have signal devices that light up on application of the footbrake."

possible instructions. It is sufficient that the instructions taken as a whole correctly stated the law."

Under the circumstances of the instant case, we think the instructions given correctly stated the law. While the trial judge may well have defined "appropriate signal," his failure to do so is not reversible error where the question before the jury was whether the signal was timely given.

*Judgments affirmed.*
*Appellants to pay the costs.*